UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| KENTUCKY MIST MOONSHINE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 15-385-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| UNIVERSITY OF KENTUCKY, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

This matter is pending for consideration of Defendant University of Kentucky's motion to dismiss Plaintiff Kentucky Mist Moonshine, Inc.'s (hereafter, "KM") Amended Complaint [Record No. 8] and the plaintiff's motion for leave to file a Second Amended Complaint [Record No. 22].  In moving to dismiss the Amended Complaint, The University of Kentucky argues that: (i) the Eleventh Amendment and state sovereign immunity bar the plaintiff's claims; (ii) the Court lacks jurisdiction over the claims involving registration of trademarks; and (iii) certain claims involve issues of standing.  [Record No. 8, pp. 10, 21, 29, 31]  With respect to Kentucky Mist Moonshine's motion for leave to amend, it contends that the tendered Second Amended Complaint cures the standing issues.  [Record No. 22]

For the reasons outlined below, the Court will grant the defendant's motion to dismiss and deny the plaintiff's motion for leave to file the proposed Second Amended Complaint.

- 1 -

## I.

The University of Kentucky (hereafter, "UK") is an educational institution operating in Lexington, Kentucky. UK has owned United States Trademark Registration No. 2,066,804 (the "804 application") [Record No. 5-1] for the mark "KENTUCKY" for several goods in Classes 16 and 25 of the Trademark International Classification System since June 3, 1997. [Record No. 5, ¶¶ 1, 5, 12, 17, 19] Kentucky Mist Moonshine, Inc. (hereafter, "KM") is a manufacturer of distilled spirits. Additionally, it sells articles of clothing with its "KENTUCKY MIST MOONSHINE" mark. [*Id.*, ¶ 16] On March 25, 2015, KM filed a federal trademark application numbered 86577855 (the "855 application") with the United States Patent and Trademark Office ("USPTO"). [*Id.*, ¶ 21; Record No. 5-3] The application proposes to use the mark to identify hats, hooded sweatshirts, jackets, pants, shirts, shoes, and socks in Class 25 and distilled spirits in Class 33. [Record No. 5-3, pp. 16−17; 8-3] The application remains pending.

On October 12, 2015, UK mailed a "cease and desist" letter to KM, requesting that KM "expressly abandon its effort to register the mark KENTUCKY MIST MOONSHINE & Design (U.S. Reg. App. Ser. No. 86/577,855) in Class 25" and:

> continue to take care to avoid using the mark in combination with the University's source-identifying color schemes and/or other indicia associated with the University, in connection with clothing, or any other goods or services . . . . It is our present position that Kentucky Mist Moonshine, Inc.'s use of the mark KENTUCKY MIST MOONSHINE to identify articles of clothing is likely to cause deception, confusion, and mistake . . . .

[Record No. 8-4, p. 1] The letter then reiterated the demand that KM abandon its application and warned that, "[i]n the event our requests are not met, the University is prepared to file a

- 2 -

Notice of Opposition" against the '855 application as it relates to Class 25.  [*Id.*, p. 2]  UK

expressed its desire to hear from KM by the end of the month.  [*Id.*]

On October 29, 2015, the plaintiff responded to the letter, informing the defendant of

its belief that its effort to register the KENTUCKY MOONSHINE MARK would not result

in dilution of or a likelihood of confusion with the KENTUCKY mark.  [Record No. 8-6, p.

1]  Next, the plaintiff's letter warned that:

> [i]f your client is unwilling to voluntarily reform their trademark registration
> to limit the scope of protection to uses of the word 'Kentucky' which clearly
> and unambiguously relate to the University of Kentucky, we will have no
> other recourse than to seek a judicial declaration as to the scope of the mark
> and to resolve allegations of likelihood of confusion, dilution, and
> infringement.

[*Id.*, pp. 1−2]  KM further expressed its desire to meet with UK's counsel, stating that it

"look[ed] forward to hearing from" UK no later than 1:00 p.m. the next day.  [*Id.*, p. 2]

At 11:57 a.m. the next day, UK sent an e-mail to KM, explaining that it did not have

sufficient time to substantively respond but that it would do so within a reasonable time to

discuss an "amicable resolution."  [Record No. 8-7]  KM's counsel responded that the parties

could "circle back to this on Monday morning," highlighting that he was feeling pressure

from KM to file a civil action against UK.  [Record No. 8-8]  At 1:22 p.m. on November 2,

2015 (Monday), UK e-mailed KM, apologizing for missing a phone call from KM and

alerting KM to a forthcoming written response to the October 29, 2015 letter.  [Record No.

8-9]

That afternoon, KM filed a civil action in this Court against UK.  *See Kentucky Mist*

*Moonshine, Inc. v. University of Kentucky*, Civil Action No. 5: 15-328-DCR (E.D. Ky.

2015).  [Record No. 1, therein]  At 4:35 p.m., UK sent KM the November 2, 2015 letter, which sought to correct certain alleged misunderstandings contained in the October 29, 2015 letter.  [Record No. 8-10]  Specifically, UK informed KM that it did not need to change its name, abandon its effort to register its mark in Class 33, stop using the mark, or stop selling T-shirts bearing the mark.  [Record No. 8-5, p. 1]  Additionally, the defendant's letter clarified that KM's use of its logo on T-shirts thus far was appropriate and that KM should "continue to take care" to avoid combining UK's indicia with KM's logo on such items.  [*Id.*, p. 2]  Further, UK discussed a possible "amicable agreement" and its proposed "limitation to the Class 25 identification of the pending registration application" to protect both parties' rights.  [*Id.*]  Subsequently, the plaintiff e-mailed the defendant, advising the defendant that the written response arrived "30 minutes too late," but expressing a desire to discuss a resolution.  [Record No. 8-10, p. 4]

On November 19, 2015, KM sent a letter to UK, explaining its interpretation of the November 2, 2015 letter.  [Record No. 12-3]  The letter specifically requested that, "[i]f the intention of the University of Kentucky is to permit the use of the KENTUCKY MIST MOONSHINE mark by Kentucky Mist Moonshine without threat of a lawsuit, then please explicitly state that intention."  [*Id.*, p. 3]  In addition, KM expressed its willingness to resolve the pending action through settlement and limit its pending application, as long as UK limited the scope of its mark.  [*Id.*]  UK did not respond to this correspondence.

On December 4, 2015, UK filed a motion to dismiss the civil action instituted in this Court.  *See* Civil Action No. 5: 15-328-DCR.  [Record No. 11, therein]  KM responded procedurally by filing a notice of voluntary dismissal, without prejudice, pursuant to Rule

41(a)(1) of the Federal Rules of Civil Procedure. *See id.* [Record No. 12, therein] The next day, KM filed an action against UK in state court. *See Kentucky Mist Moonshine, Inc. v. University of Kentucky*, Case 15-CI-4611 (Fayette Circuit Court Dec. 22, 2015). [Record No. 1-2] On December 23, 2015, UK removed that action to this Court, filing a motion to dismiss that same day. [Record Nos. 1; 4] KM then filed an Amended Complaint. Five days later, it also filed a response in opposition to the motion to dismiss. [Record Nos. 5; 7] Because the motion to dismiss was mooted by the Amended Complaint, UK filed another motion to dismiss on January 19, 2016. [Record Nos. 8; 10] On the same date, UK filed a Notice of Opposition with the Trademark Trial and Appeal Board ("TTAB") concerning the '855 application as it relates to Class 25. [Record No. 8-11]

In Count I of the Amended Complaint, KM seeks cancellation of the KENTUCKY mark in Class 25 or reformation to denote "a clear and unambiguous connection to the University of Kentucky" under 28 U.S.C. §§ 2201−02 and 15 U.S.C §§ 1119, 1052(f), and 1064. [Record No. 5, ¶¶ 29−37] The second count seeks a declaration that there is no likelihood of confusion between the KENTUCKY MIST MOONSHINE MARK and the KENTUCKY mark in "any international trademark class of goods and services." [*Id.*, ¶¶ 38−42] The plaintiff asserts in Count III that there is no dilution of the KENTUCKY mark by its "commercial use of the words 'Kentucky Mist Moonshine' in any international trademark class of goods or services." [*Id.*, ¶¶ 43−47]

Next, KM claims in Count IV that there is no infringement of the KENTUCKY mark by its "commercial use" of the aforementioned words in "any international trademark class of goods or services." [*Id.*, ¶¶ 48−52] Finally, the last count seeks a declaratory judgment

- 5 -

that the KENTUCKY mark is not famous under 15 U.S.C. § 1125.  [*Id.*, ¶¶ 53−58]  Ultimately, KM requests five declaratory judgments and an award of costs under 15 U.S.C. § 1117.  [*Id.*, p. 9]

In its motion to dismiss, UK argues that all the plaintiff's claims are barred by Eleventh Amendment and/or state sovereign immunity.  [Record No. 8-1, p. 8]  It also asserts that this Court lacks jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure to address the first two counts.  [*Id.*, p. 31]  And finally, UK alleges that KM lacks standing regarding Counts III through V.  [*Id.*, pp. 21, 29]

## II.

A party may move for dismissal based on lack of subject-matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure at any time.  *See* Fed. R. Civ. P. 12(h)(3).  Rule 12(b)(1) motions to dismiss may constitute facial or factual attacks.  *See Gentek Bldg. Products, Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007).  A facial attack "questions merely the sufficiency of the pleading."  *Id.*  With a factual attack, the Court must "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist."  *Id.*  Once a defendant challenges subject-matter jurisdiction, the plaintiff bears the burden of establishing it.  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  The plaintiff's factual allegations are not presumed to be true when the Court confronts this type of challenge.  *RMI Titanium Co. v. Westinghouse Electric Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Complaint alleges "sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the Complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

In considering a Rule 12(b)(6) motion, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990). However, it need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that, in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade &*

- 7 -

*Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

## III.

### A.    Eleventh Amendment Immunity

"When the defendant challenges subject matter jurisdiction through a motion to dismiss, the plaintiff bears the burden of establishing jurisdiction." *Hedgepeth v. Tenn.*, 215 F.3d 608, 611 (6th Cir. 2000).  The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. CONST. amend. XI.  "The sovereign immunity guaranteed by this Amendment deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity or Congress abrogates that sovereign immunity." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).  The defense of sovereign immunity raises a facial challenge to the Court's subject-matter jurisdiction. *See Sims v. Univ. of Cincinnati*, 46 F. Supp. 2d 736, 737 (S.D. Ohio 1999), *aff'd by* 219 F.3d 559 (6th Cir. 2000).

UK is considered an "arm" of the "state" for purposes of Eleventh Amendment immunity. *Hutsell v. Sayre*, 5 F.3d 996, 999 (6th Cir. 1993).  Additionally, Eleventh Amendment immunity applies to claims under the Lanham Act, 15 U.S.C. §§ 1122, 1125, *et seq. See College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 691 (1999).  The plaintiff does not take issue with the fact that UK is an arm of the Commonwealth of Kentucky and that Eleventh Amendment immunity applies to claims

under the Lanham Act and subsequent amendments.  Instead, it argues that UK's removal of this action to federal court constitutes a waiver of Eleventh Amendment immunity.  The Court will address this issue, along with other potential issues raised by UK.

### 1.     Exceptions

The exceptions to Eleventh Amendment immunity include: (i) Congress may authorize such a suit under the Fourteenth Amendment; (ii) the state may voluntarily waive such immunity; and (iii) federal courts may enjoin individual state officers in their official capacities to conform with federal law.  *See College Sav. Bank*, 527 U.S. at 670 (1999); *Ex parte Young*, 209 U.S. 123, 163 (1908).

### a.     Abrogation

To abrogate the states' immunity under the Eleventh Amendment, Congress must "unequivocally express[] its intent to abrogate the immunity" and act "pursuant to a valid exercise of power."  *Seminole Tribe of Fla. v. Fla.*, 517 U.S. 55, 55 (1996).  Congress has not abrogated immunity for intellectual property claims, including trademark claims, brought under the Lanham Act and subsequent amendments.  *See Fla. Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank*, 527 U.S. 627, 631 n.1 (1999) (addressing the Patent and Plant Variety Protection Remedy Clarification Act and discussing similar cases that address the Lanham Act); *see also College Sav. Bank*, 527 U.S. at 691 (addressing the Trademark Remedy Clarification Act, 15 U.S.C. §§ 1122, 1125); *Coyle v. Univ. of Ky.*, 2 F. Supp. 3d 1014, 1019 (E.D. Ky. 2014) (holding that Congress' attempt to abrogate Eleventh Amendment immunity through the Copyright Clarification Act was invalid).

In the present action, KM makes no argument that Congress abrogated UK's Eleventh Amendment immunity through enactment of the Lanham Act and subsequent amendments. Nor does it claim that any other federal statute abrogates such immunity with regard to the claims raised in this matter.[1]   As a result, abrogation by Congress does not apply as an exception to UK's Eleventh Amendment immunity in this case.

### b.    Waiver by Removal

A state waives Eleventh Amendment immunity by voluntarily invoking or by making a "clear declaration" that it intends to submit itself to the federal court's jurisdiction. *College Sav. Bank*, 527 U.S. at 675−76 (citing *Gunter v. Atl. Coast Line R.R. Co.*, 200 U.S. 273, 284 (1906) and *Great N. Life Ins. Co. v. Read*, 322 U.S. 47, 54 (1944)).   When reviewing a state's words, courts should infer waiver only "by the most express language or by such overwhelming implications from the text as (will) leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (internal quotation marks and citation omitted).   A state may also waive Eleventh Amendment immunity through its litigation conduct.   *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002); *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005).

"[A] State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *College Sav. Bank*, 527 U.S. at 676.   Instead, "[a] State's

---

[1]    The federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, only defines the scope of already-available declaratory relief.   It "does not operate as an express waiver of sovereign immunity." *Muirhead v. Mecham*, 427 F.3d 14, 17 n.1 (1st Cir. 2005); *CareToLive v. von Eschenbach*, 525 F. Supp. 2d 938, 952 (S.D. Ohio 2007).   While those cases addressed the federal government's sovereign immunity (rather than a state's immunity under the Eleventh Amendment), their reasoning is applicable to the present case regarding the issue of waiver.

constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984).

In *Lapides*, the Supreme Court held that, in the "context of state-law claims, in respect to which the State has explicitly waived immunity from state-court proceedings," a state waives Eleventh Amendment immunity by removing the state-court action to federal court.  535 U.S. at 617.  The Supreme Court warned that the case did "not present a valid federal claim against the State" or involve a situation where state sovereign immunity had not been waived in state court.  *Id.* at 617−18.  In other words, the *Lapides* court sought to prevent the inconsistency that would result from a defendant obtaining through removal an immunity that it had previously waived.  *Id.* at 621.

Here, the plaintiff asserts that UK waived its Eleventh Amendment immunity by removing the state-court action to this Court.  [Record No. 12, p. 8]  The defendant argues that *Lapides* does not apply to the situation at hand because the case presents a valid federal claim and/or UK had not yet waived its sovereign immunity in the state-court suit.  [Record No. 17, p. 7]  With respect to those arguments, the Court agrees with the reasoning expressed in several circuit courts, as well as a district court within the Sixth Circuit.  *See Bergemann v. R.I. Dep't of Envtl. Mgmt.*, 665 F.3d 336, 342 (1st Cir. 2011) (where state was immune from federal claim in both state and federal courts, removal did not constitute waiver of Eleventh Amendment immunity); *Stewart v. N. Carolina*, 393 F.3d 484, 490 (4th Cir. 2005) (no waiver of Eleventh Amendment immunity where state had not consented to suit in its own courts for the relevant state-law claims); *Watters v. Washington Metro. Area Transit Auth.*, 295 F.3d 36, 42 n.13 (D.C. Cir. 2002) (where state did not waive immunity for relevant

claims in state courts, *Lapides*' holding did not apply); *Burke v. Ky. State Police*, No. 14-cv-00024-GFVT-EBA, 2016 WL 361690, *5 (E.D. Ky. Jan. 27, 2016) (allowing defendants to assert Eleventh Amendment immunity for the federal claim they removed but remanding the state law claims).

*Lapides*' holding does not apply to KM's federal claims. *See Lapides*, 535 U.S. at 617; *Bergemann*, 665 F.3d at 342; *Burke*, 2016 WL 36190, at *5. And to the extent KM raises state law trademark claims,[2] *Lapides* does not apply because the Kentucky General Assembly has not waived state sovereign immunity under the circumstances at hand by enacting the Kentucky Declaratory Judgment Act. *See, e.g.*, *Stewart*, 393 F.3d at 490.

---

[2]     The plaintiff never mentions Kentucky common law in the original state court Complaint or in the Amended Complaint, so the Court doubts whether it has even raised state law claims. Further, KM seems concerned with demonstrating that claims under the Lanham Act can be considered state claims, rather than federal ones, because the Lanham Act provides for concurrent jurisdiction. [Record No. 12, p. 9] The conclusion does not follow from the premise, so the Court rejects the contention. *See, e.g.*, *Cavaliers Operating Co., LLC v. Ticketmaster*, No. 1:07CV2317, 2007 WL 3171584, *1−2 (N.D. Ohio Oct. 30, 2007) (discussing concurrent jurisdiction but still deeming the allegation under the Lanham Act a "federal claim"); *L and L Gold Assoc., Inc. v. Am. Cash for Gold, LLC*, Civil Action No. 09-10801, 2009 WL 1658108, *1 (E.D. Mich. Jun. 10, 2009) (distinguishing between trademark infringement claims under the Lanham Act and related state law claims for violation of the Michigan Consumer Protection Act and common law unfair competition); *see also Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473, 478 (1981) (state courts generally enjoy concurrent jurisdiction over federal claims).

The Court also doubts that KM has raised state law trademark claims because the "Jurisdiction and Venue" section of the Amended Complaint never states that supplemental jurisdiction exists over related state law claims under 28 U.S.C. § 1367. Additionally, the parties' pleadings do not cite Kentucky state court cases outlining common law claims for trademark infringement and/or unfair competition. Instead, it appears that KM now seeks to assert state law claims to avoid jurisdictional problems. Nevertheless, the Court has interpreted the Amended Complaint to include those common law trademark claims. Also, it is necessary for the Court to analyze state sovereign immunity to the extent KM argues that the KDJA waived UK's immunity with regard to both the state and federal claims raised under the statute.

- 12 -

### i.  State Sovereign Immunity

Section 231 of the Kentucky Constitution states that the "General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth."  The University of Kentucky is entitled to sovereign immunity under that section.  *See Withers v. Univ. of Ky.*, 939 S.W.2d 340, 343 (Ky. 1997).  Waiver is found only "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."  *Id.* at 346.

The plaintiff contends that *Commonwealth of Kentucky v. Kentucky Retirement Systems* stands for the proposition that Kentucky abrogated its sovereign immunity for all claims raised under the KDJA.  396 S.W.3d 833 (Ky. 2013).  [Record No. 12, p. 6]  In that case, the Supreme Court of Kentucky held that sovereign immunity does not apply to declaratory judgment actions "[w]hen the action involves an alleged contract with the state, or the constitutionality of a statute."  *Id.* at 838.  More specifically, the court reasoned that one of the statutes involved in the case created a contract dispute and that another statute provided for actions against the Commonwealth for breach of such a contract.  *See id.* (citing Ky. Rev. Stat. §§ 61.692; 45A.245).  Further, the court stated that, "[w]hen this is coupled with the fact [the defendant] is authorized to 'sue and be sued in its corporate name,'" as well as the language in the KDJA, "it is apparent that the Commonwealth intended to be a party in a declaratory judgment suit that might affect its inviolable contracts or its interest in duly enacted legislation."  *Id.*  While the court commented on the fact that there is "no harm to state resources from a declaratory judgment," it emphasized that cases involving contracts

with the state or the constitutionality of a state statute indisputably involve "state issue[s]."[3]
*Id.*

   *Kentucky Retirement Systems* will not be extended to the case at hand for several reasons.  First, its holding pertained primarily to an interpretation of Ky. Rev. Stat. §§ 61.692 and 45A.245.  Second, to the extent the holding interpreted the KDJA, it did so only in conjunction with the aforementioned statutes.  Third, the court's heavy emphasis on an underlying contractual and/or state constitutional/statutory dispute indicates that the holding is narrower than the plaintiff supposes.  As a result, KM has not carried its burden to demonstrate that this action falls under *Lapides*, 535 U.S. at 617, by involving state law claims over which the state has already abrogated its sovereign immunity.  *See Hedgepeth*, 215 F.3d at 611.

   In addition, it is noteworthy that *Kentucky Retirement System*'s focus on the "overwhelming implication" of a particular section in the KDJA—Ky. Rev. Stat. § 418.075. 396 S.W. at 837.  That section deals with actions involving the "legislative branch" and determinations of the "validity of a statute," neither of which are involved here.  Because that section does not appear to be relevant in the context of this case, and KM fails to offer any explanation regarding its relevance, the plaintiff has failed to carry its burden to establish

---

[3]   The court further explained that, "to shield the Commonwealth from being subject to the constitution and its legislative enactments . . . is to create a "king" who is beyond review and make the will of the people meaningless."  *Id.* at 839.  In addition, it focused on the fact that "[w]hen statutory or constitutional rights are adjudicated, the state is inevitably affected in some manner."  *Id.* at 840.  Thus, throughout the opinion the court narrows the holding to the adjudication of underlying legislative or constitutional issues.  Here, however, the underlying issues are either federal in nature or have a common law basis.  Moreover, *Kentucky Retirement Systems* stated that "the immunity issue could be relevant if the revenue or property of the state would be affected," which arguably refers to cases such as the present one.  *Id.* at 839.

abrogation/waiver of state sovereign immunity concerning any state law claims appearing in this action.[4]  *See Hedgepeth*, 215 F.3d at 611.

### ii.      The Effect of Filing of Amended Complaint

The defendant alleges that the filing of the Amended Complaint mooted any argument that its removal of this action waived Eleventh Amendment immunity.  [Record No. 8-1, p. 15]  But because there has been no abrogation or waiver of Eleventh Amendment immunity, the Court need not address this issue.  However, UK's arguments concerning this matter are unavailing.  The two cases cited by the defendant do not involve waiver of immunity by conduct.  *See Drake v. City of Detroit*, 266 F. App'x 444, 448 (6th Cir. 2008) (defect in amended complaint cannot be repaired by prior complaint because the amended complaint "supersedes" the prior one); *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928−29 (8th Cir. 2005) (where decision to amend is involuntary, subject-matter jurisdiction is determined by analyzing the original complaint).  Instead, the Court finds the reasoning in *Manasher v. NECC Telecom* to be more applicable.  310 F. App'x 804, 807 (6th Cir. 2009) (amended complaint did not revive defendant's right to compel arbitration where it had already waived the right by its litigation conduct).[5]

---

[4]      The Fifth Circuit's statement in *Meyers ex rel. Benzing v. Tx.* that states do not have two separate kinds of immunity does not alter the Court's conclusion here.  410 F.3d 236, 251 (5th Cir. 2005).  [Record No. 12, pp. 9−10]  The KDJA did not waive sovereign immunity with regard to federal or common law trademark claims.  Thus, the present case does not contain the concerns addressed in *Lapides* because UK does not stand to gain by removal an immunity previously waived.

[5]      UK asserts that KM forfeited any challenge to this issue because KM failed to respond to it in the response in opposition to the motion to dismiss.  [Record No. 17, p. 2]  It is within the discretion of the district court to determine whether a party has forfeited an argument by failing to raise it.  *See, e.g.*, *Horn v. City of Mackinac Island*, 938 F. Supp. 2d 712, 723 N.8 (W.D. Mich.

c.      ***Ex parte Young***

UK asserts that the *Ex parte Young* doctrine does not apply here as an exception to Eleventh Amendment immunity.  [Record No. 8-1, p. 20]  In that case, the Supreme Court held that federal courts could enjoin state officers in their official capacities from prospectively violating a federal statute or the U.S. Constitution.  *See Mich. Corr. Org. v. Mich. Dep't of Corr.*, 774 F.3d 895, 904 (6th Cir. 2014) (citing *Ex parte Young*, 209 U.S. 123 (1908)).  KM does not respond to this contention.  Because *Ex parte Young* applies only to state officials, this doctrine does not apply as an exception to Eleventh Amendment immunity in this case.  *See Ex parte Young*, 209 U.S. at 163; *Puerto Rico Aqueduct and Sewer Auth v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

In summary, KM's claims against UK are barred under the Eleventh Amendment.  Congress has not abrogated that immunity with regard to the federal claims, and the Kentucky General Assembly has not waived sovereign immunity with respect to the federal or state law claims through enactment of the KDJA.  Under *Lapides*, 535 U.S. at 617, UK's removal of the action from state court maintained the status quo, meaning UK retains its sovereign immunity.

## B.      Counts II Through V - *MedImmune*

Even if UK were not immune from suit under the circumstances presented, its claims would still be dismissed due to the fact that KM lacks standing.  "[A]fter removal, a federal

---

2013).  Here, the Court permitted KM to file a sur-reply addressing the mooted-waiver issue because UK would not be prejudiced by such a filing.  [Record No. 19]  UK has not provided the Court with any reasons to alter that conclusion.

- 16 -

court will apply the federal Declaratory Judgment Act, not the state law." *Foreword Magazine, Inc. v. OverDrive, Inc.*, No. 1:10-cv-1144, 2011 WL 31044, *3 (W.D. Mich. Jan. 5, 2011);[6] *TIG Ins. Co. v. Merryland Childcare and Dev. Ctr., Inc.*, Civil No. 04-2666-B, 2005 WL 3008646, *4 (W.D. Tenn. Nov. 9, 2005). The DJA provides that "[i]n a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). For cases under the DJA to pass constitutional muster under Article III of the United States Constitution, they must involve a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

In *MedImmune*, the Supreme Court determined that there was a "substantial controversy" of "sufficient immediacy and reality" where the petitioner brought a patent action against the respondent based on the theory that the respondent would enjoin the

---

[6]     Although that case cited *AARTI Hospitality, LLC v. City of Grove City* for the proposition that standing issues related to state law claims should be considered under the state's declaratory judgment law, *AARTI Hospitality* involved diversity, not federal-question, jurisdiction. 350 F. App'x 1, 6 (6th Cir. 2009). Other district court cases do not suggest that the state's declaratory judgment laws should be used. *See Nationwide Mut. Fire Ins. Co. v. Creech*, 431 F. Supp. 2d 710, 712 n.1 (E.D. Ky. 2006); *Bland v. Southline Steel Industries, Inc.*, No. 1:08CV-161-M, 2008 WL 5274880, *2 n.1 (W.D. Ky. Dec. 16, 2008) (applying federal DJA though state court action was brought under Kentucky's DJA and removed based on diversity); *see also Grizzly Processing, LLC v. Wasau Underwriters Ins. Co.*, Civil Action No. 7:08-226-KKC, 2009 WL 4730205, *1 (E.D. Ky. Dec. 4, 2009) (same); *Horace Mann Ins. Co. v. Alberts*, Civil Action No. 1:06CV-181-M, 2007 WL 3025071, *2 n.1 (W.D. Ky. Oct. 15, 2007) (same). In any event, if KM's claims premised on the federal DJA fail, then the Court may decline to exercise supplemental jurisdiction over the allegedly-remaining state law claims. *See* 28 U.S.C. § 1367(c)(3). Therefore, the Court will first address the viability of the claims premised on the federal DJA and then address the remand issue regarding the claims premised on the KDJA.

petitioner's sales if it did not continue to send the respondent royalties pursuant to a licensing agreement.  *Id.* at 128.  The court reasoned that the "factual and legal dimensions of the dispute [were] well defined and, but for petitioner's continuing to make royalty payments, nothing about the dispute would render it unfit for judicial resolution." *Id.*

Here, UK attempts to distinguish *MedImmune* by alleging that its letters to KM did not elucidate a controversy of sufficient immediacy and reality—in essence, UK argues that the controversy at hand is not ripe.  [Record No. 8-1, p. 21]  Further, the defendant asserts that the plaintiff's claims are not pleaded with sufficient specificity, resulting in requests for advisory opinions unrelated to a "substantial controversy"—in essence, a standing argument.[7]  As discussed below, the Court agrees with both arguments.

### 1.    Ripeness

UK contends that its October 12, 2015 letter fails to demonstrate the existence of a controversy of sufficient immediacy and reality between the parties because it makes only two requests: (1) that KM abandon its registration of the KENTUCKY MIST MOONSHINE mark, and (2) that KM "continue to take care to avoid using the mark in combination with the University's source-identifying color schemes and/or other indicia."  [Record No. 8-4, p. 1]  However, UK does not address its statement in the letter that "[i]t is our present position that Kentucky Mist Moonshine, Inc.'s use of the mark KENTUCKY MIST MOONSHINE to identify articles of clothing is likely to cause deception, confusion, and mistake . . . ."  [*Id.*]

---

[7]      In *MedImmune*, the Supreme Court explained that the justiciability problem could be described in terms of standing or ripeness because they "boil[ed] down to the same question" in that case.  549 U.S. at 128 n.8.  Here, the issues are distinct.

That statement makes the letter, at the very least, ambiguous concerning a ripe controversy over KM's use of its mark.

"The purpose of a declaratory judgment action cannot be defeated simply by the stratagem of a correspondence that avoids magic words such as 'litigation' and 'infringement.'" *Hewlett-Packard Co. v. Acceleron, LLC*, 587 F.3d 1358, 1362 (Fed. Cir. 2009). Where a defendant contacted the plaintiff by phone call and letter, specifically addressing the particular patent at issue and warning the plaintiff to "proceed carefully with any product launch," the court held that subject-matter jurisdiction existed. *Sun Style Intern., LLC v. Sunless, Inc.*, No. 1:12-CV-00179, 2013 WL 3967923, *5 (W.D. Ky. Aug. 1, 2013). Likewise, the court in *Crowned Heads, LLC v. Nat'l Grange of Order of Patrons of Husbandry* found jurisdiction where the defendant's cease and desist letter: (i) noted that the defendant owned several incontestable registrations for its marks; (ii) stated that the plaintiff's proposed use would cause a likelihood of confusion and dilution; (iii) urged the plaintiff to withdraw its application for registration; (iv) suggested the defendant would oppose the registration; (v) warned the plaintiff to refrain from using the mark; and (vi) threatened objection to any commercial use of the mark. No. 3:12-cv-1062, 2013 WL 1347874, *4−5 (M.D. Tenn. Apr. 3, 2013).

The present case resembles *Crowned Heads*. In the October 12, 2015 letter, UK noted its ownership of several incontestable registrations. [Record No. 8-4, p. 1] Further, it urged KM to "expressly abandon" its application for registration. [*Id.*] In addition, the defendant stated that it was prepared to file a Notice of Opposition to the registration. [*Id.*, p. 2] Regarding the second, fifth, and sixth factors considered in *Crowned Heads*, it appears

- 19 -

that UK's statement that KM's "use of the mark" is "likely to cause deception, confusion, and mistake" could be interpreted as: (1) indicating that KM's proposed use would cause likelihood of confusion; (2) warning KM to refrain from using the mark; and (3) threatening objection to commercial use of the mark. *See Crowned Heads*, 2013 WL 1347874, at *4−5. Although UK might argue that the overall context of the letter suggests another interpretation, KM's alleged interpretation was reasonable.

UK highlights the case of *World Religious Relief v. Gospel Music Channel*, 563 F. Supp. 2d 714, 716 (E.D. Mich. 2008), to support its position that the October 12, 2015 letter does not establish a substantial controversy of sufficient immediacy and reality between the parties.   [Record No. 8-1, p. 26]   In that case, the court determined that the parties' correspondence did not confer jurisdiction under the DJA because it failed to mention litigation and had a non-threatening tone.  *Id.*  Specifically, the court reasoned that the defendant's letter focused on the plaintiff's use of the words "gospel music" with particular font and in connection with television programing.  *Id.* at 717.  It further noted that the plaintiff became "unnecessarily defensive early on, misstating or misinterpreting statements" in the letters.  *Id.* at 716.

The present case resembles *World Religious Relief* in that UK focused on the problematic use of KM's mark in connection with certain University indicia.  [Record No. 8-4, p. 1]  However, the aforementioned statement regarding KM's problematic *present use* of the mark makes *Crowned Heads* appear more applicable.  *See* 2013 WL 1347874, at *4−5; *see also Alticor, Inc. v. Nutrisystem, Inc.*, No. 1:12-CV-256, 2012 WL 4794596 (W.D. Mich. Oct. 9, 2012) ("It is generally undisputed that a charge of infringement, and even conduct or

- 20 -

action short of an actual charge of infringement, is sufficient to establish the existence of a case or a controversy.") (plaintiff could reasonably interpret letter expressing concern about both present and future dilution as threatening litigation).

However, the November 2, 2015 letter clarified the intent of the initial letter, demonstrating that UK was not threatening legal action or concerned about KM's present or intended use of its mark. That letter expressly stated that KM did not need to "stop using the mark" or "stop selling its T-shirts bearing the logo" [Record No. 8-5, p. 1], nullifying the earlier, apparently-unintended statement that KM's "use of the mark" regarding "articles of clothing" was "likely to cause deception." [Record No. 8-4, p. 1] To the extent KM might argue that the November 2, 2015 letter is not relevant to the analysis because KM received it after filing the original action in this Court, [*compare* Record No. 8-10, p. 1 *with Kentucky Mist Moonshine, Inc. v. Univ. of Ky.*, Civil Action No. 5: 15-328-DCR (E.D. Ky. 2015) (timestamp of Record No. 1, therein)], the Court notes that a "voluntary dismissal without prejudice leaves the situation as if the action had never been filed," meaning the relevant time to determine subject-matter jurisdiction is the time of removal of the present action. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 465 n.7 (6th Cir. 2000).

KM contends that its November 19, 2015 letter -- and UK's failure to respond to that letter -- provides evidence that there was a ripe controversy between the parties. [Record No. 12, p. 18] In the November 19, 2015 letter, KM explicitly addressed the confusing language in UK's October 12, 2015 letter, noting that it differed from UK's clarification letter. [Record No. 12-3] Because of that contradiction, KM requested that UK explicitly state its intention "to permit the use of the KENTUCKY MIST MOONSHINE mark" without "threat

- 21 -

of a lawsuit." [*Id.*, p. 3]  Although the defendant's failure to respond to that letter may weigh in favor of a finding that the dispute was ripe, the strength of that evidence is weak because KM had already filed an action against UK at that point.   Additionally, KM's request for assurance was too broad for UK to respond without compromising its interests.

While this case presents a close call, the reasoning in *World Religious Relief* persuades the Court that the case was not ripe at the time of removal, and is still not ripe. 563 F. Supp. 2d at 716.  As in that case, the plaintiff here misstated UK's intentions early on, attempting to create a controversy.  *Id.* at 717.   Further, both cases involved only three letters, and both cases involved a letter from the defendant clarifying that it desired merely that the plaintiff use caution when combining its mark with certain indicia.  *Id.*  Therefore, the Court lacks subject-matter jurisdiction over the present action because it is not ripe under Article III.[8]

### 2.    Standing

UK also claims that Counts II through V fail to present a "substantial controversy" between the parties because they are not pleaded with sufficient specificity.    [Record No. 8-1, p. 28]  Again, *World Religious Relief* is helpful in understanding this contention because it discussed both ripeness and standing.   In that case, when the defendant's letter expressed concern regarding use of the plaintiff's mark in combination with certain indicia, the plaintiff responded with a letter asserting that the defendant did not have "exclusive rights to the words 'gospel music' in any form or for any goods or services."   563 F. Supp. 2d at 717.

---

[8]      The Court notes that KM must still satisfy Article III standing principles with regard to claims brought under the KDJA for this Court to retain jurisdiction over those claims.  *See DaimlerChrysler Corp v. Cuno*, 547 U.S. 332, 335 (2006).

The court determined that there was no "actual controversy" under the DJA based on the plaintiff's "purposeful misstatement or misinterpretation" of the defendant's letter, which created a "larger controversy than Defendant asserted." *Id.*

### a.   Counts III and IV

Counts III and IV mirror the claims in *World Religious Relief*.  Count III requests that the Court "declare that there is no dilution of the KENTUCKY mark by the Plaintiff's commercial use of the words 'Kentucky Mist Moonshine' in any international trademark class of goods or services." [Record No. 5, ¶ 47]  Similarly, Count IV requests a declaratory judgment that there is no infringement of the KENTUCKY mark by commercial use of those words in any international trademark class of goods or services.  [*Id.*, ¶ 52]  In the October 12, 2015 letter, UK did not suggest that KM was diluting its mark or infringing its trademark rights by merely using the words "Kentucky Mist Moonshine."   Rather, the defendant claimed that the "use of the *mark*" was likely to cause deception, confusion, and mistake. [Record No. 8-4, p. 1]   Further, the only problematic statement in the letter references "articles of clothing" instead of "any international trademark class of goods or services" or the equivalent.  [*Id.*; Record No. 5, ¶¶ 47, 52]  As a result, KM's allegations are broader than any controversy appearing in the correspondence between the parties.  *See World Religious Relief*, 563 F. Supp. 2d at 717.  Therefore, Counts III and IV will be dismissed because they fail to allege a "substantial controversy" under the DJA sufficient to confer Article III standing.[9]  *See MedImmune*, 549 U.S. at 127.

---

[9]     With respect to Count IV, KM concedes that it is "inartfully pled" because it seeks a declaration of non-infringement in "all" international classes instead of just Class 25.  [Record No. 12, p. 17]

b.      Count V

With respect to Count V, UK argues that there is no substantial controversy regarding a dilution claim under 15 U.S.C. § 1125.  [Record No. 8-1, p. 30]  Conversely, KM asserts that UK's letters establish UK's concerns regarding dilution.  [Record No. 12, p. 17]  The Court agrees with the defendant.  The October 12, 2015 letter never mentions dilution. Instead, it focuses on "deception, confusion and mistake," all of which relate to a "likelihood of confusion" claim under 15 U.S.C. § 1125(a)(1)(A), rather than a dilution claim under § 1125(c).  [Record No. 8-4, p. 1]  Although KM highlights UK's reference to the "strength" of its registered mark, that reference does not necessarily suggest a dilution concern because strength is a factor considered in likelihood of confusion claims.  *See, e.g.*, *Homeowners Grp., Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).  [Record No. 12, p. 17, *referring to* Record No. 8-4, p. 1]

Further, UK's concern in its November 2, 2015 letter that fans and non-fans "routinely attempt to associate their goods and/or services with the University" could easily support a likelihood of confusion claim.  *See, e.g.*, *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 626 (6th Cir. 2000).  [Record No. 8-5, p. 2]  Likewise, the January 13, 2016 letter from KM commenting on UK's use of the phrase "death by a thousand cuts" could relate to factors in a likelihood of confusion claim, such as the strength of the mark.  *See Homeowners Grp.*, 931 F.2d at 1107.  [Record No. 12-4, p. 2]  When combined with UK's numerous references to likelihood of confusion claims, these references do not demonstrate a substantial controversy between the parties regarding a dilution claim under 15 U.S.C. §

- 24 -

1125(c).[10]  Consequently, Count V will be dismissed for lack of jurisdiction under Article III.[11]  *See MedImmune*, 549 U.S. at 127.

### c.      Count II

Although UK alleges that Count II should be dismissed because district courts do not have jurisdiction over trademark registration proceedings [Record No. 8-1, p. 31], it appears that such an argument misconstrues the plaintiff's pleadings.  Instead of asking the Court to intervene in the trademark registration proceedings, KM seeks a declaration that there is no likelihood of confusion between the two parties' respective marks.  [Record No. 12, p. 21]  Therefore, the Court will only address UK's argument that KM lacks standing to bring the likelihood of confusion claim presented in Count II.  [Record No. 17, p. 9]

KM seeks a declaration that there is "no likelihood of confusion between the KENTUCKY MIST MOONSHINE mark and the KENTUCKY mark in any international trademark class of goods and services" under 15 U.S.C. § 1114(1).  As explained previously, even if the October 12, 2015 letter suggested an immediate controversy regarding a claim of

---

[10]     The plaintiff points to the Notice of Opposition as an indication of the controversy between the parties.  [Record No. 12, p. 14]  However, the Notice of Opposition does not mention a dilution claim, supporting the defendant's contention that there is no controversy regarding dilution.  Further, the Notice of Opposition refers to the KENTUCKY MIST MOONSHINE mark, not merely the use of the words "Kentucky Mist Moonshine." [Record No. 8-11, ¶¶ 35; 42; 50]  Therefore, the Notice of Opposition is not helpful to KM's arguments regarding standing.

[11]     KM argues that Count V contains a common law claim of dilution, as well.  [Record No. 12, p. 16]  The title of that count suggests that it contains only a federal claim.  [Record No. 5, p. 8]  In any event, the purpose of the Court's alternative analysis is to demonstrate that there are no federal claims supplying jurisdiction in this Court under 28 U.S.C. § 1331.  To the extent KM makes state law claims, they will be dismissed because there are no remaining federal claims.  *See* 28 U.S.C. § 1367(c)(3).  Moreover, the Court notes that state law claims premised on the federal DJA do not provide original jurisdiction.  *See Heydon v. MediaOne of Se. Mich., Inc.*, 327 F.3d 466, 470 (6th Cir. 2003).

- 25 -

likelihood of confusion, that claim was confined to "articles of clothing," not "any international trademark class of goods and services."  [*Id.*, Record No. 8-4, p. 1]  Although the plaintiff asserts that the threat regarding a Notice of Opposition establishes UK's belief that KM was infringing on its rights with respect to Class 25 [Record No. 20, p. 9], UK clarified that, with regard to "other goods or services," it did not believe KM had infringed on its rights (or would infringe on its rights if KM continued with the same behavior). [Record No. 8-4, p. 1]

Count II fails to confront with specificity the concerns raised by UK in its October 12, 2015 and subsequent letters.  As a result, even if the Court determined that the parties' correspondence revealed a real and immediate dispute, Count II does not address the "substantial controversy" appearing in such correspondence under the *MedImmune* standard. *See MedImmune*, 549 U.S. at 127.

### C.      Count I – Lack of Subject-Matter Jurisdiction

Finally, UK argues that Count I should be dismissed because the Court "has no independent jurisdiction over the registration of trademarks."  [Record No. 8-1, p. 31]  The relevant statutory provision states that "[i]n any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations . . . ."  15 U.S.C. § 1119.  Section 1119 "arms the court with the power to update the federal trademark register to account for a mark's actual legal status (or lack thereof) *after it has been adjudicated*."  *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 593 (6th Cir. 2015) (quoting *Cent. Mfg., Inc. v. Brett*, 492 F.3d 876, 883 (7th Cir. 2007)) (emphasis added).  In other words, a plaintiff's request for cancellation of the registration is really a

- 26 -

demand for a certain type of equitable relief, rather than a claim in and of itself.  *See id.*

(describing section 1119 as "[p]art of the equitable relief" requested by the plaintiff); *Cool*

*Springs Press v. Belo Co.*, No. 3:05-0879, 2006 WL 1006728, *2 n.1 (M.D. Tenn. Apr. 14,

2006) (stating that cancellation "could only occur if [the plaintiff] were to prevail on its

request for declaratory judgment") (citing *Windsurfing Int'l, Inc. v. AMF Inc.*, 828 F.2d 755,

759 (Fed. Cir. 1987))[12].

Here, KM agrees that "ongoing claims" must provide "independent jurisdiction" for

the relief of cancellation to be appropriate, explaining that "Section 37 of the Lanham Act is

not relied upon to provide" such an independent basis of jurisdiction.  [Record No. 12, p. 20]

Because there are no remaining claims providing an independent basis of jurisdiction,

dismissal of this request for relief is appropriate.

### D.    Remand

Because UK has sovereign immunity in this Court, under the Eleventh Amendment,

and in its state courts with regard to the claims presented in the Amended Complaint, remand

of the state law claims is not appropriate.  *Compare with Great Lakes Consortium v. Mich.*,

480 F. Supp. 2d 977, 985 (W.D. Mich. 2007) (remanding state law claims because sovereign

immunity had been waived in state court).  Additionally, even if UK were not immune from

suit, remand would not be appropriate because KM has failed to allege an "actual

controversy" for the purposes of the KDJA.  *See Foley v. Kentucky*, 306 S.W.3d 28, 31 (Ky.

---

[12]     *See also Airs Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., Inc.*, 744 F.3d
595, 599 (9th Cir. 2014) (cancellation claim is not an independent cause of action; *Ditri v.
Coldwell Banker Residential Affiliates, Inc.*, 954 F.2d 869, 873 (3d Cir. 1992) (controversy
regarding "validity of or interference with a registered mark must exist before a district court has
jurisdiction to grant the cancellation remedy").

2010) (explaining that a claim under the KDJA "does not involve a question which is merely hypothetical or an answer which is no more than an advisory opinion").  First, the parties' correspondence does not demonstrate a ripe controversy.  Second, Counts II through V are too broad to allege an "actual controversy" between the parties.  As a result, the plaintiff lacks standing to raise these claims.  Where the Supreme Court of Kentucky cites favorably to federal law in addressing the "actual controversy" requirement of the KDJA, remand is not appropriate because the underlying state law issue is not novel.  *See Associated Industries of Ky. v. Kentucky*, 912 S.W.2d 947, 951 (Ky. 1995); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).  Further, remand would not be in the interest of judicial economy because this case has been pending in some way for over six months; it was originally filed in federal court; and the claims are largely federal in nature.  *See Landefeld*, 994 F.2d at 1182.

## IV.

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely granted when justice so requires.  Fed. R. Civ. P. 15(a)(2).  However, the Sixth Circuit has cautioned that the right to amend is not absolute or automatic.  *Tucker v. Middleburg-Legacy Place, LLC*, 539 F.3d 545, 551 (6th Cir. 2008).  Factors that affect the determination include undue delay, lack of notice to the opposing party, bad faith or dilatory purposes on the part of the movant, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008).

- 28 -

Here, KM seeks leave to amend Counts II, III, and IV of the Amended Complaint to refer only to "international trademark class 25," rather than "any international trademark class of goods and services." [*Compare* Record No. 22-1, ¶¶ 43, 48, 53 *with* Record No. 5, ¶¶ 42, 47, 52]  UK alleges that the proposed amendments are futile because they fail to cure the deficiencies in the Amended Complaint.  [Record No. 23, p. 4]  The Court agrees with UK for several reasons.

First, the proposed amendments do not (and cannot) resolve the Eleventh Amendment and sovereign immunity questions.  Second, with regard to Counts III and IV, the proposed amendments would not cure the fact that KM is improperly seeking a declaratory judgment regarding its commercial use of the words "Kentucky Mist Moonshine," when the plaintiff should be referring more specifically to its use of the KENTUCKY MIST MOONSHINE mark.  [Record No. 22-1, ¶¶ 48, 53]   Third, with respect to Count III, the proposed amendment fails to address the fact that the plaintiff lacks standing to bring a non-dilution claim.  Fourth, regarding Count II, the proposed narrowing to Class 25 is still too broad because any controversy demonstrated by UK's letters pertained to use of the KENTUCKY MIST MOONSHINE mark on articles of clothing.   [*See* Record No. 8-4, p. 1.] Consequently, the proposed amendments are futile.  *See, e.g.*, *Thiokol Corp v. Dep't of Treasury, Mich.*, 987 F.2d 376, 382−83 (6th Cir. 1993) (proposed amendment to add section 1983 claim was futile because section 1983 did not abrogate state's immunity); *500 Assoc., Inc. v. Vermont Am. Corp.*, 496 F. App'x 589, 593, 596 (6th Cir. 2012) (district court properly denied leave to amend where tendered amendments would not cure statute-of-limitations issue).

Additionally, the other factors in *Foman* support denial of the motion for leave to amend.  371 U.S. at 182.  The plaintiff filed its motion for leave to amend over 90 days after the defendant removed the state court action to this Court and over 50 days after KM realized the need for an amendment.  [*See* Record Nos. 12, p. 17; 22.]  Further, the plaintiff had more than one opportunity to narrow its claims.  It could have narrowed them after voluntarily dismissing the previous action in this Court or after removal to this Court, but it failed to do so, even though it filed an Amended Complaint.

The repeated failure to cure deficiencies suggests bad faith on the part of KM.  *See, e.g.*, *Lee v. Mason Sec. Network, Inc.*, Civil Action No. 6:13-138-KKC, 2014 WL 6979439, *1 (E.D. Ky. Dec. 9, 2014) (highlighting that the plaintiff "did not file this motion as a strategic response to encourage delay or combat a dispositive motion").  When UK filed a motion to dismiss in the previous action, KM voluntarily dismissed the claims, quickly re-filing the action in state court.  *Kentucky Mist Moonshine, Inc. v. University of Kentucky*, Civil Action No. 5: 15-385-DCR (E.D. Ky. 2015).  [Record Nos. 11; 12, therein]  Upon removal to this Court, UK filed another motion to dismiss, and KM quickly amended its Complaint, forcing UK to re-file its motion to dismiss.  [Record Nos. 1; 4; 5]  After UK filed its third motion to dismiss, KM again sought leave to amend the Amended Complaint.  [Record Nos. 8; 22]  Those procedural maneuvers suggest bad faith, or at least dilatory purposes, on the part of KM.  *See Foman*, 371 U.S. at 182.

Moreover, those maneuvers unduly prejudiced UK because it had to file (and in some situations, alter) its motion to dismiss on three occasions.  *See Foman*, 371 U.S. at 182.  Although discovery has not commenced, this action (or some version of it), has been pending

for over six months.  And it has suspended the proceedings in front of the Trademark Trial and Appeal Board.  [Record No. 24, p. 3]  Because KM's proposed amendments are futile, and because the factors in *Foman* weigh in favor of denying leave to amend, the Court will not permit KM to file its tendered Second Amended Complaint.

### V.

Under the circumstances presented, the University of Kentucky is immune from suit in this Court based on the Eleventh Amendment to the United States Constitution.  Further, sovereign immunity would prevent a Kentucky court from hearing the claims presented in this case.  Even if the defendant were not entitled to immunity, Kentucky Mist Moonshine, Inc. lacks standing to raise the claims presented, and the claims are not ripe.  Finally, the plaintiff's proposed amendments would be futile.

Accordingly, it is hereby

**ORDERED** as follows:

1.    Defendant University of Kentucky's motion to dismiss [Record No. 8] is **GRANTED**.

2.    All claims asserted by the plaintiff against the defendant in this action are **DISMISSED**, with prejudice.  This civil action is **DISMISSED** and **STRICKEN** from the docket.

3.    Plaintiff Kentucky Mist Moonshine, Inc.'s motion for leave to file the tendered Second Amended Complaint [Record No. 22] is **DENIED**.

This 23rd day of June, 2016.

 Signed By:

**_Danny C. Reeves_** DCR

**United States District Judge**